## In re HENRY.

(Court of Appeals of District of Columbia. Submitted May 13, 1925. Decided June 1, 1925.)

No. 1738.

1. Patents ⬤=36—Evidence held to establish patentable process for reproducing wood grain design on solid surface.

Evidence *held*, to establish patentable process for reproducing wood grain design on solid or metallic surface.

2. Patents ⬤=104—In doubtful cases it is policy of court to resolve doubt in favor of applicant for patent.

In doubtful cases it is policy of court to resolve doubt in favor of applicant for patent.

Appeal from Commissioner of Patents.

In the matter of the application of James P. Henry for patent. From a decision of the Patent Office, rejecting claims, applicant appeals. Reversed.

Melville Church and C. B. Des Jardines, both of Washington, D. C., and H. E. Stauffer, of Dayton, Ohio, for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a Patent Office decision rejecting claims 1, 7, 10, 11, and 14 of appellant's application.

Claim 10 is reproduced as most representative of the group:

"10. The process of reproducing the grain of wood on a solid surface, which consists in producing a photographic negative of the wood to be simulated; producing from the negative a grained plate, the masses [it is agreed that the word should be 'recesses' instead of 'masses'] produced by the graining varying in depth with the shade to be produced and arranged to simulate the graining of the original material; filling the plate with coloring matter; withdrawing the coloring matter from the recesses of the grained plates by means of an elastic roller to which the coloring matter adheres; transferring the coloring matter from the elastic roller to the surface to be grained; merging the masses one into the other, so as to obliterate the lines of union."

[1] Appellant is an employee of the National Cash Register Company, manufacturers of cash registers inclosed within steel casings or cabinets. There came to be a demand for the finishing of these cabinets or casings in imitation wood grain, to correspond to the natural wood finishing of the stores in which the cash registers were to be used. The problem of evolving a process for accomplishing this was intrusted to Henry. His prior knowledge of the art, supplemented by a further investigation, disclosed no satisfactory process by which the desired result could be accomplished. The only prior patent in this particular art was that to Herzog, No. 700,493, dated May 20, 1902.

In his specification Herzog says that his invention relates to painting machines for imitating the grain of wood by transferring its design from one surface to another. He proposed to accomplish this result by first selecting a model or master board, spreading a stain or color evenly over this board, scraping or wiping the surface clean of any surplus of color, passing a roller over it, and thereby transferring to the soft surface of the roller an impression of the grain marks of the model board. The impression on the roller is then transferred to the surface to be treated or "painted." Herzog neither contemplated nor suggested removing pith from the pores of the master board, so as to reproduce the irregularities of the surface, and thus make a contrasting color pattern, which might be transferred to the surface to be finished. In other words, Herzog had no conception of producing an etched master board. Herzog's process was found by appellant to be incapable of producing the desired result, and it is not contended by the

Patent Office that, in and of itself, this process anticipates that of appellant. It is significant that, although Herzog's patent was more than 20 years old when appellant entered the field, the process there disclosed had not been adopted by manufacturers of cash registers.

Henry conceived the idea of photographing a piece of natural wood and preparing therefrom an etched metal plate of varying depth, corresponding to the color shades or tones upon the original wood. This idea he obtained from the Rembrandt photogravure process. Having prepared this etched or master plate, Henry then employed the roller disclosed by Herzog, the result of which was something far in advance of anything theretofore achieved. Samples of cash registers finished under this process and submitted to the court on hearing disclosed that the imitation of natural wood graining was so close as to render it difficult to distinguish the real from the artificial. The process was immediately adopted, and has been received with great favor by the public.

We start with two outstanding facts: First, appellant has made a distinct and valuable contribution to the art; and, second, his application has been rejected, not upon any one patent, but upon several. In other words, now that a new result has been achieved, it is contended that any one skilled in the art, at any time during the many years that have intervened between the dates of issuance of the various patents relied upon and appellant's achievement, without the exercise of anything more than mechanical skill, might have produced the same result. We have frequently suggested that it is much easier to follow a blazed trail than to make it. After a problem has been solved, its former difficulties are not so apparent, and it is not hard to find those persons who confidently assert that their failure to solve the problem is due solely to the fact that it has not received their attention. The object of the patent law is to reward those who do successfully give these problems their attention, and who make real contributions to the useful arts. Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 S. Ct. 698, 46 L. Ed. 968.

The Herzog reference already has been discussed. The second reference was the patent to Saalburg, No. 923,799, dated June 1, 1909. That patent was for "a certain new and useful improvement in processes of making pictures," an unrelated art, and may be dismissed with the observation that Henry does not claim to have invented the method of making an etched plate. His conception was the idea that he might use such a plate in the wood-graining art, and thus eliminate the defects resulting from the use of the master board disclosed by Herzog. What we have said as to the Herzog patent applies with equal force to the British patent to Leicester, No. 13,987, dated in 1914.

We come now to the last reference, an article in the London Times, under date of September 10, 1912, bearing the heading "Rembrandt Photogravure." This article relates to the art of printing photographs, not to the wood-graining art, and in our view contains no information that is not to be found in the patents to Saalburg and Leicester. Appellant's problem went beyond the mere printing of a picture. His task was to transfer to a more or less irregular metal surface a fac simile of the intricate grains of wood. As already indicated, he conceived the idea of employing this etched plate in combination with the Herzog roller, and thus produced a new and useful result. The following suggestions of the court in the Carnegie Steel Co. Case, 185 U. S. 403, 22 S. Ct. 698, 46 L. Ed. 968, are apposite here: "Some of the expressions, taken by themselves, seem to foreshadow the Jones idea; but there was nothing in any of these discussions that filled the requirement of the law (Rev. Stat. § 4886 [Comp. St. § 9430]) of a description in a publication sufficient to anticipate the patent."

[2] Moreover, it is the policy of this court, even in doubtful cases, to resolve the doubt in favor of the applicant. In re Eastwood, 33 App. D. C. 291; In re Harbeck, 39 App. D. C. 555. Here appellant was concerned with a real problem, which he has solved through a very ingenious combination of old elements, some of which were taken from unrelated, or at most remotely related, arts. To deny him protection on the theory that any one could have accomplished the same result, although the experts in the art had failed to do so, would be violative of the spirit and purpose of the patent law.

The decision is reversed as to claim 10, which, as we have indicated, will sufficiently protect appellant's invention.

Reversed as to claim 10.