## In re BERRY.

Court of Appeals of District of Columbia.

Submitted November 13, 1928.   Decided December 3, 1928.

Petition for Rehearing Denied December 22, 1928.

No. 2082.

C. A. Weed, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from decision of the Commissioner of Patents refusing ten claims in appellant's application. Claims 6, 7, and 15, being representative of the three groups, are here reproduced:

"6. In a sliding couch bed, the combination of a pair of relatively slidable couch bed sections one housed under and parallel with the other, said under section having spiral mattress supporting springs, a foldable mattress, and means automatically operative on the sliding of one section to raise the spiral springs of the sliding under section into position substantially level with and in juxtaposition to the top of its companion section or to lower the same into position to be housed thereunder and means for folding and unfolding said mattress.

"7. In a sliding couch bed, the combination of a pair of relatively slidable couch bed sections each including mattress supporting spiral springs, the spiral springs of one section being housed under and parallel with those of the other section, and means operative to slide one of the sections and to automatically raise and lower the spiral springs of one of the sections."

"15. In a sliding couch bed, the combination of a main mattress carrying section and a sliding section slidable under the top of the main section, a vertically shiftable mattress carrying frame carried by said sliding section, and means for sliding the sliding section and when in its fully extended position for also raising and lowering the vertically shiftable frame."

The invention relates to a sliding bed, commonly known as a "day bed," consisting of a normally stationary section and a second section housed beneath and adapted to slide out into exposed position parallel to the first, each section being provided with a series of spiral springs of the conventional type, the springs in the slidable section being secured in a skeleton box frame adapted to be raised in the slidable frame so that the two sets of springs are on a level. To close the bed the slidable springs may be lowered to permit their return beneath the other set. A U-shaped handle member extending the length of the bed, and carrying one section of a foldable mattress, is pivoted at its ends on a stationary section, and, through a system of levers and links including elbow levers supporting the skeleton frame on the movable bed section, operated first to slide the movable section out into exposed position and then raise the skeleton frame and its springs to a level with the other springs. A reversal of the movement of the U-shaped member first lowers the skeleton frame and then slides the movable section into its housed position.

The Primary Examiner and the Board of Examiners in Chief rejected all the claims of the application. The Board rejected claims 1, 2, and 5, directed to the sliding out and elevating of one section, on Heller (patent granted November 6, 1923), in view of Sowle (patent granted June 20, 1905).

Claims 3, 4, 6, and 10, the Board found, added a folding mattress and means for folding and unfolding it. These claims the Board rejected on Heller in view of the Plunkett patent dated February 21, 1911.

Claims 7, 9, 11, 15, and 23 the Board found "are directed to the same subject matter as claims 1, 2 and 5, that is the sliding out and elevation of one section." These claims they rejected on the Heller reference.

Claim 8 the Board found did not materially differ from claims 2, 4, and 6.

On appeal to the Commissioner, he first discussed claims 15 and 23, which are not limited to spiral springs.

He then discussed claims 1, 2, 5, 7, and 11, all of which include the limitation of spiral springs. These claims he rejected on Heller

.. 

in view of Sowle. In discussing these claims, he said: "The claims under consideration are not definite about the height of the spiral springs; · they might be considerably less than six inches in height and still meet the requirements of these claims." Spiral springs had long been known in the art. Counsel for the Commissioner in his brief says: "Appellant has disclosed a bed of the type commonly known as a 'day bed,' which comprises two nested sections provided with spiral springs of a *familiar type.*" (Emphasis ours.) Obviously, therefore, this term, as used in the claims, denoted "a familiar type" of spring, and there was no justification for giving it a different meaning. In other words, appellant referred to spiral springs substantially six inches in height.

The Commissioner then dealt with claims 3, 4, and 6, which he rejected on Plunkett in view of Heller.

He then considered claims 8, 9, and 10, and said: "To combine the structures of the three references mentioned above (Heller, Sowle, and Plunkett) so as to produce a connected mechanism or means that would meet the requirements of these three claims would, it is believed, overtax the ingenuity reasonably expected of the ordinary mechanic skilled in the art. It is thought, therefore, these claims should be allowed."

It thus appears that not only was there a divergence of view in the Patent Office, but that the Examiners in Chief and the Commissioner also differed in the groupings of the claims.

Appellant contends that his bed is a great improvement over the "day beds" of the prior art, and that about 50,000 have already been sold; that the "day beds" of the prior art have usually been provided with flat springs, and that owing to the height of spiral springs it was a difficult problem to construct a bed equipped with such springs so that the sliding section when slid out would be brought up level with the main section. Appellant contends that he is the first to provide spiral or coil spring sliding mattress sections in which the spiral springs of one section, shown as the sliding section, are automatically raised and lowered by the pulling out of the sliding section; that he has provided a means which will both slide out one section, without the necessity of pulling it out by hand, and which, on the sliding out of that section, will simultaneously and automatically raise and lower the spiral springs.

The Sowle patent, dated June 20, 1905, covered a "day bed" comprising two sections and equipped with spiral springs. In his specification, the patentee says: "A further object of this invention is to provide a construction whereby the supplemental section may be collapsed to such extent that it may be pushed within or below the main section and carry with it a coiled-spring mattress of an ordinary kind." In other words, in Sowle's construction the operator was compelled to pull out the sliding section, and to do this care had to be exercised or it would be liable to bind at one end. After it was pulled out, the operator had to manipulate a crank to raise the spiral spring frame so that it would be level with the main frame. No means are provided for raising or lowering the spiral springs automatically. In appellant's construction, the mere opening of the bed automatically brings out the sliding section and raises it into parallel position with the main section. The Sowle patent was a clumsy and impractical contraption as compared with appellant's.

The Heller patent, dated November 6, 1923, covers a "day bed" with a flat spring, so that instead of the drawn out portion being six inches below the main portion, as in appellant's, it is substantially level with the main portion. The Patent Office tribunals rejected a number of appellant's claims on the theory that any one skilled in the art could, by combining the mechanisms of these two patents (Sowle and Heller), produce appellant's invention. It may first be observed that in 1923 Heller, who was an expert in the art and who must have fully appreciated the desirability of producing a practical coiled-spring "day bed," did not accomplish what the Patent Office thinks was obvious. In other words, instead of producing a practical coiled-spring "day bed," he produced and was granted a patent on a flat spring "day bed." In an affidavit which appellant has filed in this case, Heller says that for many years he has been familiar with beds and sliding bed constructions, and that "none of these Combination Beds and Tables were ever manufactured or sold. The bed shown and described in my said patent is particularly adapted for use only with a flat spring and it would not be practicable or possible to use a helical or coil spring mattress instead of a flat spring for the reason that this would require the lengthening of the links to such an extent that the stops would have to be differently located and this difference in location would cause the sliding spring to engage the under side of the fixed spring before the sliding spring was entirely drawn out which would make an inoperative structure and I know of no way in which the structure

could be changed to permit the use of coil springs, for as the structure was designed it was intended that the sliding section have only a slight up and down movement and this would be possible only with flat springs which as is well-known are not at any place more than about ½″ in height whereas helical or coiled springs are commonly used about 6″ in height and must necessarily be of that height to be of any practicable use."

The Plunkett patent, dated February 21, 1911, covers a flat spring "day bed" of the common type. The Commissioner found that it involved no invention to add the Plunkett foldable mattress "and its operating means to the modified construction of Heller," previously discussed by the Commissioner, and therefore rejected claims 3, 4, and 6.

We are convinced that through the conception and construction of his bed appellant has made a distinct, practical, and valuable contribution to the art, and that, as properly found by the Commissioner, he deserves to have his invention protected. We are of the view that appellant's problem could not have been solved by the exercise of mere mechanical ability through an examination of the three patents mentioned. This, in effect, was the ruling of the Commissioner, and he was clearly right. See In re Huff, 48 App. D. C. 258; In re Henry, 55 App. D. C. 396, 6 F.(2d) 699.

Since claims 3, 4, and 6, do not contain a limitation that the two means are adapted to be operated simultaneously, we concur in their rejection, but claim 7 we think should be allowed. It is but slightly broader than the allowed claims. Claims 15 and 23 are not limited to spiral springs, and, for reasons already made apparent, we think they were properly rejected.

The decision is affirmed as to claims 1, 2, 3, 4, 5, 6, 11, 15, and 23, and reversed as to claim 7.

Affirmed as to all but claim 7.